# In the United States Court of Federal Claims

No. 18-1907C
(E-Filed: February 8, 2019)[1]

| | |
|---|---|
| VOITH HYDRO, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> THE UNITED STATES, ) <br> ) <br> Defendant, ) <br> ) <br> and ) <br> ) <br> ALSTOM RENEWABLE US LLC, ) <br> ) <br> Intervenor-defendant. ) | Contested Application for Access to Protected Material for Plaintiff's Expert Consultant; RCFC, App. C, ¶ 18. |

David T. Ralston, Jr., Washington, DC, for plaintiff.  Frank S. Murray, Micah T. Zomer, and Krista A. Nunez, of counsel.

Jonathan D. Shaffer, Tysons Corner, VA, for intervenor-defendant.  Mary Pat Buckenmeyer and Todd M. Garland, of counsel.

OPINION AND ORDER

CAMPBELL-SMITH, Judge.

---

[1] This opinion was issued under seal on February 1, 2019.  Pursuant to the ordering language, the parties were invited to identify source selection, proprietary or confidential material subject to deletion on the basis that the material was protected/privileged.  No redactions were proposed by the parties.  Thus, the sealed and public versions of this opinion are identical, except for the publication date, this footnote, and the correction of two typographical errors.

On January 16, 2019, plaintiff Voith Hydro, Inc. (Voith) filed an amended application for access to protected material on behalf of Mr. Lloyd C. Reed.  See ECF No. 38.  On January 25, 2019, intervenor-defendant Alstom Renewable US LLC (Alstom) filed its opposition to that application.  See ECF No. 44.  Pursuant to the court's order of January 29, 2019, ECF No. 47, Voith was ordered to file a reply brief in support of Mr. Reed's application for access to protected information.  Voith's reply was filed on January 29, 2019.  ECF No. 49.  This matter is fully briefed and ready for resolution.[2]  For the following reasons, Mr. Reed's application for access to protected information is **DENIED**.

I.   Background

Ruling on an unopposed motion for a protective order filed by plaintiff, the court entered a protective order in this bid protest on December 14, 2018.  See ECF No. 13.  Thus, the parties and the court acknowledged the sensitive nature of the information contained in documents filed under seal in this case.  See ECF No. 13 at 1 ("The court finds that certain information likely to be disclosed orally or in writing during the course of this litigation may be competition-sensitive or otherwise protectable and that entry of a Protective Order is necessary to safeguard the confidentiality of that information.").  As noted in the complaint, offerors competing in the subject procurement would submit highly technical proposals, which would touch upon topics such as "hydraulic design," and "turbine runner designs."  Compl., ECF No. 1 at 8.

The court also adopted the parties' proposed briefing schedule in this protest, which was tailored to present the merits of the protest for the court's review before a partial voluntary stay of contract performance ends on April 30, 2019.  ECF No. 14 at 2 (order).  According to that schedule, as subsequently amended to add a calendared oral argument, briefing would conclude on March 29, 2019, and oral argument, if held, would take place on April 10, 2019.  Id.; see also ECF No. 36 at 1.  The administrative record was scheduled for filing, and was filed, on December 21, 2018.  See ECF Nos. 23-31.

All of the parties' applications for access to protected information, except one, were filed before the administrative record was filed under seal.  On Saturday, January 12, 2019, three weeks after the administrative record had been filed under seal, and four weeks after the protective order had been entered in this case, plaintiff filed Mr. Reed's application for access to protected information, ECF No. 35, which was timely opposed by Alstom, ECF No. 37.  Once the court clarified its view of the flurry of filings related

---

[2]   Defendant did not file a brief and repeatedly declined to take a position on this matter.

2

to the dispute regarding Mr. Reed's request for access to protected information,[3] the briefing of the dispute includes Mr. Reed's amended application, Alstom's response, and Voith's reply.[4]  See ECF Nos. 38, 44, 49.

II.     Legal Standard

Pursuant to the Procedure in Procurement Protest Cases, Appendix C to the Rules of the United States Court of Federal Claims (RCFC), "[e]ach party seeking access to protected information on behalf of an individual must file with the court an appropriate 'Application for Access to Information Under Protective Order.'"  RCFC, App. C, ¶ 18(a).  The appropriate form in this instance is Form 10, entitled "Application for Access to Information Under Protective Order by Expert Consultant or Witness," which requires a number of pertinent representations by the applicant.[5]  See RCFC, App. of Forms, Form 10.  When considering whether access to protected material is appropriate, the court considers:  "the nature and sensitivity of the information at issue, the party's need for access to the information in order to effectively represent its position, the overall number of applications received, and any other concerns that [might] affect the risk of inadvertent disclosure."  RCFC, App. C, ¶ 18(c).

III.    Analysis

As noted above, the parties agree that the protected information filed in this case is sensitive.  See ECF No. 14 at 1-2.  Voith argues that Alstom has not shown that the sensitive information it seeks to withhold from Mr. Reed is worthy of protection.  ECF No. 49 at 13-16.  The court must disagree.

The sensitive information highlighted by Alstom is competition-sensitive, and some of it is proprietary.  ECF No. 44 at 12-13.  This is precisely the type of information that the court's protective order is designed to safeguard, and this same information was protected at the Government Accountability Office (GAO).  Id.  Further, based on the court's preliminary review of this procurement, the subject matter is such that Alstom's

---

[3]     The court's resolution of the parties' filings regarding this dispute simplified the record to include only an amended application, a response brief and a reply brief.  See ECF No. 47.  For this reason, plaintiff's waiver argument, ECF No. 49 at 4 n.1, which depends on briefs not before the court, is unpersuasive.

[4]     Because the resolution of this dispute could impact plaintiff's motion for judgment on the administrative record, due to be filed on February 4, 2019, the court has expedited its consideration of Mr. Reed's amended application.

[5]     Mr. Reed's amended application appears to conform with the required elements of Form 10.

proposal is likely to contain information that would be harmful to Alstom if disclosed. The court finds that there is no real dispute that protected information in this case is highly sensitive and requires adequate assurances to prevent inadvertent disclosure.

As for one of the other elements of the rule to consider, no party has expressed concerns with regard to the number of applications for access to protected information that have been submitted. The court's analysis, therefore, must consider whether Mr. Reed's access to protected information is necessary so that Voith may "effectively represent its position," and whether Alstom's concerns about "the risk of inadvertent disclosure" have merit. See RCFC, App. C, ¶ 18(c). These two topics are addressed in turn.

> A.  Plaintiff Has Not Demonstrated that Mr. Reed's Access to Protected Material Is Essential to the Effective Prosecution of Its Case

The parties have extensively relied on this court's decision in Zeidman Technologies, Inc. v. United States, 136 Fed. Cl. 50 (2018). Despite many differences between Zeidman and this protest, the analysis of the effective representation question in Zeidman is useful here. Even where Mr. Zeidman was proffered as perhaps the "only expert" in the technology used in his company's proposal, his participation, informed by full access to protected information, was not deemed to be essential to that plaintiff. Id. at 54. In part, the court's finding on this issue was based on the deferential standard of review applicable in bid protests. See id. (citing Advanced Data Concepts, Inc. v. United States, 216 F.3d 1054, 1058 (Fed. Cir. 2000); Matt Martin Real Estate Mgmt., LLC v. United States, 96 Fed. Cl. 106, 112 (2010)). The court again relies on these authorities to find that Mr. Reed's access to protected information is not essential to plaintiff, because the court's focus will be on the administrative record and the reasons provided in that record for the award to Alstom.

The court also finds one of the GAO decisions cited by Alstom to be helpful: EER Sys. Corp., B-256383, B-256383.2, B-256383.3, 94-1 CPD ¶ 354, 1994 WL 250193 (Comp. Gen. June 7, 1994) (EER Systems). As in this case, the protestor's three consultants, all professors, were active in the type of commercial activity that was being procured by the agency. 1994 WL 250193, at *6. Because of the potential for competitive endeavors involving these individuals, their applications for access to protected material "raised the risk of inadvertent disclosure of information learned from [the objecting party's] proposal." Id. Although the GAO did not conclude that their applications necessarily "posed a major risk of inadvertent disclosure," the applications for access were denied. Id. at *7.

The GAO noted, first, that the objecting party's "proprietary data [wa]s indeed very valuable and that any inadvertent disclosure might cause competitive harm to that firm." Id. In those circumstances, the GAO "would only grant access to this data under

4

our protective order if necessary to reach a fair and reasonable decision of the protest." Id.  In the view of the GAO, that bid protest did not require expert testimony for its resolution, and, thus, the risk of inadvertent disclosure was too great.  Id.

This case is very similar to EER Systems.  Alstom's data is very valuable and, in some instances, proprietary.  Mr. Reed's consulting practice operates in the same spheres as Alstom's business activities.  See ECF No. 44 at 6-7.  Nothing in the complaint suggests that this protest cannot be resolved on the basis of the administrative record, or that the court would need expert testimony provided by plaintiff's consultant.  Plaintiff has not shown that Mr. Reed's request for access should be distinguished from those of the consultants discussed in EER Systems.

Voith also argues that because expert opinion is already in the administrative record, plaintiff, too, should be allowed to procure expert testimony based on protected information.  ECF No. 49 at 19-20.  This argument overreaches.  An agency's internal analysis of proposals is customarily included in an administrative record before this court.  There is nothing unusual about the presence of expert opinion within that analysis.  Mr. Reed's access to protected information cannot be justified by the mere presence of expert opinion in the agency's record of its deliberations.

For all of the above reasons, the court finds that Voith has not shown that effective representation of its interests requires that Mr. Reed have access to protected information in the record.

B.      The Risk of Inadvertent Disclosure Is Too Great

Voith argues that Mr. Reed's statements on his application, and his experience under other protective orders, show that his access to protected information would not pose a sufficient risk of inadvertent disclosure to warrant the denial of his application.  ECF No. 49 at 6-7, 11, 16-18.  Alstom argues that Mr. Reed's consulting activities, in the same region, and in the same hydroelectric industry, put a great deal of Alstom's future business interests at risk.  ECF No. 44 at 6-7.  Alstom notes, for example, the substantial overlap between Mr. Reed's customer base and the current and potential customers of Alstom and its business partners.  Id. at 13-16.  In the court's view, the risk of inadvertent disclosure here appears to be at least as great as the risk of inadvertent disclosure discussed in EER Systems.  See 1994 WL 250193, at *7 (holding that the protestor's consultants' applications for access should be denied, even where "it was not clear that granting these experts access to [the objecting party's] proprietary data posed a major risk of inadvertent disclosure").  The court agrees with Alstom that the risk of inadvertent disclosure by Mr. Reed is too great to allow him access to protected material in this case.[6]

---

[6]      The parties' reliance on U.S. Steel Corp. v. United States, 730 F.2d 1465 (Fed. Cir. 1984) is of little help here.  That decision provides a narrow holding:  "We hold only

IV.     Conclusion

      Alstom has shown that Mr. Reed's amended application for access to protected material should be denied.  His access to protected information has not been shown to be required for Voith to effectively represent its position in this bid protest.  The risk of inadvertent disclosure is also too great to allow Mr. Reed access to protected information in the administrative record.

      The court reminds the parties, however, that the filing of final redacted versions of their briefs on the merits of this protest is required by this court's protective order.  See ECF No. 13 at 3-4.  This requirement should be met promptly.  See id. at 3.  In the court's view, no more than 8 business days should be required to complete the redaction approval process and the filing of the final redacted versions of the parties' briefs.

      Accordingly, plaintiff's amended application for access to information under protective order by Lloyd C. Reed, ECF No. 38, is **DENIED**.  On or before **February 12, 2019**, the parties shall **CONFER** and **FILE** a **Proposed Redacted Version** of this opinion, with any competition-sensitive or otherwise protectable information blacked out.

      IT IS SO ORDERED.

                                      s/Patricia E. Campbell-Smith
                                      PATRICIA E. CAMPBELL-SMITH
                                      Judge

---

that status as in-house counsel cannot alone create that probability of serious risk to confidentiality and cannot therefore serve as the sole basis for denial of access [to protected information]." Id. at 1469.  That holding offers little, if any, guidance in this case.