# In the United States Court of Federal Claims

No. 18-1907C

(E-Filed: February 26, 2019)[1]

| | |
|---|---|
| VOITH HYDRO, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> THE UNITED STATES, ) <br> ) <br> Defendant, ) <br> ) <br> and ) <br> ) <br> ALSTOM RENEWABLE US LLC, ) <br> ) <br> Intervenor-defendant. ) | Post-Award Bid Protest; Motion to Supplement the Administrative Record with Expert Report; Findings in Report Not Needed for Effective Judicial Review of Procurement Decision. |

David T. Ralston, Jr., Washington, DC, for plaintiff. Frank S. Murray, Micah T. Zomer, and Krista A. Nunez, of counsel.

Douglas G. Edelschick, Trial Attorney, with whom were Joseph H. Hunt, Assistant Attorney General, Robert E. Kirschman, Jr., Director, Douglas K. Mickle, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant. Theresa L. Hampson, United States Army Corps of Engineers, Walla Walla, WA, of counsel.

Jonathan D. Shaffer, Tysons Corner, VA, for intervenor-defendant. Mary Pat Buckenmeyer and Todd M. Garland, of counsel.

---

[1]  This opinion was issued under seal on February 21, 2019. Pursuant to the ordering language, the parties were invited to identify source selection, proprietary or confidential material subject to deletion on the basis that the material was protected/privileged. No redactions were proposed by the parties. Thus, the sealed and public versions of this opinion are identical, except for the publication date and this footnote.

OPINION AND ORDER

CAMPBELL-SMITH, Judge.

On February 4, 2019, plaintiff Voith Hydro, Inc. (Voith) filed its "motion to supplement the record and admit the Reed Report into evidence." See ECF No. 54. Plaintiff's motion for judgment on the administrative record, filed the same day, references the February 4, 2019 expert report of Mr. Lloyd C. Reed (Reed Report). See ECF Nos. 55, 55-1. Plaintiff's motion to supplement the administrative record with the Reed Report is opposed by defendant, ECF No. 60, and by intervenor-defendant Alstom Renewable US LLC (Alstom), ECF No. 62. Plaintiff's reply brief in support of its motion to supplement was filed on February 15, 2019. See ECF No. 64. In order to preserve the briefing schedule in this bid protest, the court has given expedited consideration to plaintiff's motion to supplement. For the following reasons, plaintiff's motion to supplement the administrative record is **DENIED**.

I.   Background

This bid protest challenges "the evaluation and award decision by the U.S. Army Corps of Engineers, Walla Walla District ('USACE' or the 'agency') under Request for Proposals No. W912EF-17-R-0004 (the 'Solicitation' or 'RFP'), which sought proposals for the design, supply and installation of new turbines in fourteen hydroelectric generator units at the McNary Lock and Dam Powerhouse located on the Lower Columbia River." ECF No. 1 at 1 (complaint). The protest filed here was preceded by a post-award bid protest at the Government Accountability Office (GAO). Id. at 3. That protest was dismissed as academic when the agency informed the GAO that it intended to take correction action to address concerns about the award raised in Voith's GAO protest. Id. at 5. Here, plaintiff argues that the agency's decision to award the contract to Alstom, notwithstanding the corrective action undertaken by the agency, failed to correct significant evaluation errors committed by the agency. Id.

Voith's challenge to the award to Alstom raises three general areas of concern. In Count I of the complaint, plaintiff alleges that the evaluation of the offerors' technical proposals and of their preliminary turbine designs was flawed. Id. at 41-43. In Count II, plaintiff alleges that the agency's past performance evaluation was unreasonable, arbitrary and capricious. Id. at 43-45. In Count III, Voith contends that the price evaluation of proposals was flawed. Id. at 45-48. Together, as summarized in Count IV, plaintiff contends that these three types of evaluation errors invalidate the agency's determination that Alstom, not Voith, provided the best value proposal in this procurement. Id. at 48.

After the court adopted the briefing schedule suggested by the parties for cross-motions for judgment on the administrative record, see ECF No. 14 (scheduling order), a dispute arose as to whether Mr. Lloyd C. Reed, an expert consultant for plaintiff, should be granted access to confidential information filed under seal in this bid protest. The court denied Mr. Reed access to sealed filings in this case on February 1, 2019. See ECF No. 51 (sealed opinion); ECF No. 58 (public version of opinion). The current dispute as to supplementation of the administrative record with the Reed Report, ECF Nos. 54-1 through 54-5, arose on February 4, 2019. By February 15, 2019, plaintiff's motion was fully briefed, see ECF No. 64, and the court now gives expedited consideration to plaintiff's motion. The court turns first to the standard of review applicable to plaintiff's motion to supplement the administrative record.[2]

II.  Standard of Review for Requests to Supplement the Administrative Record in a Bid Protest

In Axiom Resource Management, Inc. v. United States, 564 F.3d 1374 (Fed. Cir. 2009), the United States Court of Appeals for the Federal Circuit identified the acceptable circumstances under which the administrative record may be supplemented in a bid protest. The Axiom panel criticized a decision of this court which permitted supplementation of the administrative record in a bid protest, and criticized the trial court's over-broad reliance on Esch v. Yeutter, 876 F.2d 976, 991 (D.C. Cir. 1989), a case which provides a list of justifications for the supplementation of the administrative record of an agency action. Axiom, 564 F.3d at 1379-81.

The court notes that the Axiom panel adopted a restrictive standard for supplementation of the administrative record in a bid protest, and favorably cited Murakami v. United States, 46 Fed. Cl. 731 (2000), aff'd, 398 F.3d 1342 (Fed. Cir. 2005). Axiom, 564 F.3d at 1380. The Axiom standard for supplementation of the administrative record in a bid protest is a direct quotation from Murakami, stating that "supplementation of the record should be limited to cases in which 'the omission of extra-record evidence precludes effective judicial review.'" Id. (quoting Murakami, 46 Fed. Cl. at 735). The Federal Circuit relied on the cases cited by this court in Murakami to conclude that "[t]he purpose of limiting review to the record actually before the agency is to guard against courts using new evidence to 'convert the "arbitrary and capricious" standard into effectively de novo review.'" Id. (quoting Murakami, 46 Fed. Cl. at 735

---

[2]  The parties have sought guidance from a great number of decisions issued by this court when faced with requests to supplement the administrative record in a bid protest. Because precedential guidance from the United States Court of Appeals for the Federal Circuit is determinative here, the court will not, except in a few instances, address the manifold holdings of this court cited by the parties.

and citing Fla. Power & Light Co. v. Lorion, 470 U.S. 729, 743-44 (1985); Camp v. Pitts, 411 U.S. 138, 142 (1973)).

The thrust of the Axiom decision, and Murakami, is that this court must exercise restraint when considering whether or not to supplement the administrative record in a bid protest. See id. (favoring a "more restrictive approach" and questioning the vitality of Esch) (citations omitted); Murakami, 46 Fed. Cl. at 735 (stating that the construction of the Esch justifications for allowing supplementation of an administrative record should be "extremely limited") (citations omitted). For these reasons, the court must carefully consider whether the Reed Report is a proper supplement to the administrative record in this case. In essence, the court must decide whether, absent the court's consideration of the findings in the Reed Report, the administrative record in this case will permit an effective judicial review of the procurement in question.[3]

III.     Analysis

Plaintiff's motion contains four broad arguments.[4] First, plaintiff contends that the agency's procurement decision cannot be effectively reviewed under the Administrative Procedure Act, 5 U.S.C. § 706 (2012) (APA), unless the Reed Report's findings are considered. ECF No. 54 at 10-12, 14-15. According to Voith, "the Reed Report provides the factual predicate for Voith's claims that the agency failed to consider necessary factors, data and important aspects in its award decision, and thus record supplementation with the Reed Report is permissible and warranted." Id. at 15.

Second, Voith contends that the court's record of this case should be supplemented with the Reed Report, even if the court finds that the administrative record should not be so supplemented. Id. at 15-16. Plaintiff argues that this court may permit materials not considered by the agency to be included in its own record, so that various determinations may be made in bid protests. Id. at 8. One area of inquiry mentioned by

---

[3] The court declines to discuss at length the holding in AgustaWestland North America, Inc. v. United States, 880 F.3d 1326 (Fed. Cir. 2018). That decision condemns a "sua sponte supplement[ation of] the administrative record" by a judge of this court in the context of a bid protest, not the granting of a motion to supplement the administrative record. Id. at 1331. In AgustaWestland, the Federal Circuit simply recognizes that Axiom remains good law and applies the holding of Axiom to the facts of that case. Id. at 1331-32.

[4] The court has considered all of plaintiff's contentions, and addresses the principal arguments presented in its motion to supplement the administrative record in this opinion. None of plaintiff's arguments shows that supplementation of the administrative record in this case with the Reed Report is appropriate under the Axiom standard.

plaintiff is the factor weighed before this court issues injunctive relief in a bid protest, referred to as the "public interest" factor. Id. Another area of inquiry mentioned by plaintiff is the issue of "competitive prejudice." Id.

Third, plaintiff argues that the nature of this procurement is so highly technical and complex that Mr. Reed's commentary is required to explain the subject matter to the court. According to plaintiff, "[a]dminis[t]rative record supplementation with the Reed Report is also warranted as it presents information needed to explain technical and complex issues of hydropower electric." Id. at 17. In support of this argument, Voith contends that "the agency itself obtained expert advice on several occasions during the procurement . . . , and in the successful prior GAO protest, GAO requested a declaration from the agency's expert." Id. at 18.

Fourth, plaintiff asserts that the Reed Report is admissible evidence under several rules in the Federal Rules of Evidence. Id. at 18-20. Voith argues in this regard that "there is no evidence that [the Reed Report's] probative value is substantially outweighed by other factors, such as undue prejudice or confusion." Id. at 19. Plaintiff also assures the court that Mr. Reed is qualified to opine as an expert on the issues he addresses in his report. Id. at 19-20.

The court addresses each of these topics in turn.

A.   Effective Judicial Review

Plaintiff devotes a great deal of attention in its motion to the APA standard of review, and very little to the Axiom standard. Compare ECF No. 54 at 5-8, 10-15, with id. at 14 n.1, 16-17. It is important to note the distinction between the APA standard of review, which focuses on the merits of the bid protest, and the Axiom standard of review, which focuses narrowly on the supplementation of the administrative record issue. The Axiom standard serves the purpose of ensuring that an APA review of the procurement proceeds correctly, and that the trial court does not engage in a de novo review of the proposals before the procuring agency. See 564 F.3d at 1380 ("The purpose of limiting review to the record actually before the agency is to guard against courts using new evidence to 'convert the "arbitrary and capricious" standard into effectively de novo review.'") (citations omitted).

What plaintiff proposes in its motion is the introduction of new evidence, i.e., the findings of the Reed Report, to influence the court's review of the merits of Alstom's and Voith's proposals that were before the agency. Under Axiom, such "new evidence" must be excluded unless the court's APA review of the agency's procurement decision could not be effective without the Reed Report. See id. ("[S]upplementation of the record should be limited to cases in which 'the omission of extra-record evidence precludes effective judicial review.'") (citation omitted). Nothing in the contents of the Reed

5

Report, or in the caselaw cited by plaintiff, convinces the court that effective review of the award to Alstom requires the findings contained in the Reed Report.  Thus, under Axiom, which is precedent binding on this court, plaintiff's motion must be denied.

In addition, two other precedential decisions of the Federal Circuit counsel against supplementation of the administrative record in this instance.  First, the APA standard of review for bid protests brought in this court was central to the holding in Alabama Aircraft Industries, Inc.-Birmingham v. United States, 586 F.3d 1372 (Fed. Cir. 2009) (Alabama Aircraft).  The following passage explains why the trial court's bid protest decision failed that standard and was reversed:

> The trial court's duty was to determine whether the agency's price-realism analysis was consistent with the evaluation criteria set forth in the RFP, see Galen Med. Assocs., Inc. v. United States, 369 F.3d 1324, 1330 (Fed. Cir. 2004), not to introduce new requirements outside the scope of the RFP.  The court's attempt to rewrite the RFP to account for the impact of aging aircraft in the manner the court preferred went beyond the scope of the court's review, and amounted to an impermissible substitution of the court's judgment for the agency's with regard to how the contract work should be designed.  See Motor Vehicle Mfrs. [Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983)] ("The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency.").
>
> This is not a case in which the agency "entirely failed to consider an important aspect of the problem." Id.  As explained, the agency considered the aging aircraft issue, but because the impact on future requirements was unknown, it decided the best approach was to provide all offerors with the three-tier work package on which to base their proposals.  This was a determination well within the agency's discretion.  The agency's subsequent price-realism analysis based on the set work package was not arbitrary and capricious, and the trial court's contrary determination was not within the court's scope of review under the APA standard.

Alabama Aircraft, 586 F.3d at 1375-76.

Here, if the court were to supplement the administrative record with the Reed Report, it, too, would be introducing a new requirement, rewriting the RFP, and impermissibly substituting its judgment for that of the agency as to how to measure the relative merits of the submitted proposals. Id.  Mr. Reed's "value-added attributes"

6

measure that he applied to Voith's proposal is not outlined in the RFP.[5]  See ECF No. 54-1 at 1.  This court declines plaintiff's invitation to substitute its judgment for the agency's in a manner prohibited by Alabama Aircraft, which is precedent binding on this court.[6]

Finally, as noted by both the government and Alstom, if Voith had wished to substitute its "value-added attributes" measure for the evaluation measures included in the solicitation, or add this "necessary" analysis to those measures, ECF No. 54 at 15; ECF No. 54-1 at 1, the proper time to have done so would have been pre-award, not post-award.  ECF No. 60 at 5; ECF No. 62 at 33.  This type of challenge must be brought before proposals are received by the agency.  See Blue & Gold Fleet, L.P. v. United States, 492 F.3d 1308, 1313 (Fed. Cir. 2007) ("We also hold that a party who has the opportunity to object to the terms of a government solicitation containing a patent error and fails to do so prior to the close of the bidding process waives its ability to raise the same objection subsequently in a bid protest action in the Court of Federal Claims.").  Under Blue & Gold Fleet, plaintiff's attempt to change the evaluation criteria of this procurement by introducing the Reed Report and its evaluation measure, post-award, is untimely.

Applying Axiom, Alabama Aircraft and Blue & Gold Fleet, plaintiff's motion to supplement the administrative record in this bid protest with the Reed Report must be denied.[7]

---

[5]  In its reply brief, Voith acknowledges that Mr. Reed's analysis is different than that conducted by the agency, in that it purportedly "quantified" the advantages of Voith's technical proposal, and addressed the "net present economic value" of those advantages.  ECF No. 64 at 10, 20.  Nothing in plaintiff's reply brief alters the court's conclusion that Mr. Reed's evaluation of Voith's technical proposal strayed from the evaluation scheme set forth in the solicitation.

[6]  In its reply brief, plaintiff states that "Voith is proffering the Reed Report to assist the Court in its application of the APA rational review standard, by providing an economic analysis that shows that the documented, evaluated advantage of Voith's proposal that the [Source Selection Authority] ignored in her best-value determination was substantial enough to constitute 'an important aspect of the problem,' and to facilitate the Court's ability to assess whether that violation of the APA standard for rational decision-making was prejudicial to Voith under the circumstances."  ECF No. 64 at 16.  This is precisely the type of "new requirements" analysis condemned in Alabama Aircraft.  586 F.3d at 1376.

[7]  In plaintiff's reply brief, Voith presents two new arguments.  To the extent that these arguments are foundational arguments that should have been brought in plaintiff's opening brief, they are waived.  See infra note 8.  When a party litigates a bid protest

B.     Public Interest and Competitive Prejudice

Plaintiff has alleged, in a cursory manner, that the Reed Report should be allowed into the court's record so that it may be referenced when the court weighs the public interest factor, one of the four factors considered before this court issues an injunction in a bid protest. ECF No. 54 at 8. Plaintiff's argument in this regard is contained in part of one sentence in its opening brief, without any explanation as to how the Reed Report is relevant to the public interest factor. Id. The court observes, also, that the Reed Report is not discussed in the section of plaintiff's motion for judgment on the administrative record devoted to the public interest factor. See ECF No. 55-1 at 51. Because plaintiff has not shown how the findings in the Reed Report are relevant to the court's weighing of the public interest injunctive relief factor, and has not cited any findings from the Reed Report in the public interest section of its motion for judgment on the administrative record, the Reed Report cannot be included in the court's record.[8]

---

under an expedited schedule, it cannot fail to argue the merits of its motion in its opening brief and defer the presentation of essential arguments until its reply brief is submitted to the court. To the extent that plaintiff's new arguments merely respond to the opposition briefs before the court, they fail to persuade, for the following reasons.

First, plaintiff contends that Mr. Reed's analysis merely "reaffirms and gives effect to" consensus strengths recognized by the agency in Voith's technical proposal. ECF No. 64 at 13. In the court's view, if Mr. Reed's findings are purely duplicative of the evaluation contained in the administrative record, they are not necessary for effective judicial review. Second, plaintiff contends that the Reed Report fills gaps in the administrative record, because his findings show that the award decision neglected to take into account all of the advantages of Voith's technical proposal. Id. at 11-13. The parties in this case do not need Mr. Reed's "value-added attributes" measure to present their arguments, founded on the administrative record, regarding whether the agency rationally considered the advantages and disadvantages of Alstom's and Voith's proposals when making its award decision. The court concludes that the Reed Report is not necessary for effective judicial review.

[8]     In its reply brief, plaintiff finally explains how the Reed Report might aid the court in weighing the public interest factor: "the Reed Report . . . demonstrate[es] that enjoining the award to Alstom, with its inferior design, to permit a proper award decision that considers the benefits to the Government of Voith's superior design, serves the public interest." ECF No. 64 at 19. However, this argument is untimely as raised and is thus deemed waived. See, e.g., Arakaki v. United States, 62 Fed. Cl. 244, 246 n.9 (2004) ("The court will not consider arguments that were presented for the first time in a reply brief or after briefing was complete." (citing Novosteel SA v. United States, 284 F.3d

8

Plaintiff's view of the Reed Report's relevance to the competitive prejudice suffered by Voith is better explained. ECF No. 54 at 6, 8, 15. The motion to supplement points to a broad swath of summary findings and the conclusion section of the Reed Report. Id. at 15 (citing ECF No. 54-1 at 23-30). The motion to supplement also references the following passage in plaintiff's motion for judgment on the administrative record:

> Indeed, as reflected in the expert report of Lloyd Reed, the benefits to the government of Voith's ability to exceed specification targets, with a net present economic value of roughly $65 million. Yet the [administrative record] indicates that neither the [Source Selection Advisory Council] nor the [Source Selection Authority] took those benefits into account in their comparative analysis and best-value determination, thereby prejudicing Voith by failing to consider a material benefit of its proposal that pertained to several of the key objectives of the entire procurement.

ECF No. 55-1 at 26 (citation omitted). Finally, plaintiff may have also intended to reference a section of its discussion of the agency's best value trade-off analysis which addressed, generally, alleged inaccuracies in the evaluation of the savings that could have been realized if Voith's proposal had been selected for award. See id. at 48-49. But see ECF No. 54 at 15 (citing only to ECF No. 55-1 at 45-47); ECF No. 64 at 20 (citing only to ECF No. 55-1 at 50-51).

The court concludes that plaintiff considers the Reed Report to support its analysis of the competitive prejudice suffered by Voith in this procurement, attributing some measure of prejudice to the agency's alleged misunderstanding of all of the economic advantages of Voith's proposal. See ECF No. 64 at 18-22 (arguing that the Reed Report should supplement the court's record because its findings are relevant to the issue of competitive prejudice). This is, in the court's view, yet another attempt by plaintiff to critique the rationality of the evaluation scheme set forth in the solicitation and used by the agency to compare proposals.[9] The court therefore agrees with Alstom that supplementation of the court's record with the Reed Report is improper, because it

---

1261, 1274 (Fed. Cir. 2002); Cubic Def. Sys., Inc. v. United States, 45 Fed. Cl. 450, 467 (1999))).

[9] Plaintiff's protest challenges the rationality of the agency's award decision. See, e.g., Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1332 (Fed. Cir. 2001). That award decision is reviewed through the prism of the administrative record. Plaintiff cannot use the "competitive prejudice" inquiry as a back entrance into record supplementation with material which primarily addresses the merits of this protest.

attempts to introduce a new, undisclosed evaluation measure addressing the "value-added attributes" of proposals into the APA review of the agency's award decision. See ECF No. 62 at 35 ("Supplementation of the Court record is not appropriate where the materials sought to be admitted address the substance of the protest . . . ." (citing Commc'n Constr. Servs., Inc. v. United States, 116 Fed. Cl. 233, 258 (2014); Al Ghanim Combined Grp. Co. Gen. Trad. & Cont. W.L.L. v. United States, 56 Fed. Cl. 502, 511-12 (2003))).

Plaintiff insists that the competitive prejudice inquiry is not subject to the Axiom standard. See ECF No. 54 at 16 n.2 (arguing that Axiom "does not apply to supplementation of the Court record"); ECF No. 64 at 19 (noting that, in the context of "the issue of competitive prejudice to Voith," Axiom "does not apply"). As previously stated in this opinion, the Reed Report is an inappropriate supplementation of the administrative record under Axiom. Plaintiff will not be permitted to introduce the Reed Report into the court's record, when this document clearly is proffered to primarily address the merits of the protest, under the rubric of addressing competitive prejudice. Instead, plaintiff must establish prejudice, if any, by drawing from the administrative record to challenge the agency's award to Alstom.

C. Expert Explanation

The court disagrees with plaintiff's contention that the technical aspects of this procurement cannot be understood unless the Reed Report is considered. The GAO protest proceeded without the opinions of Mr. Reed. See ECF No. 62 at 7-8. Moreover, the administrative record in this case is voluminous, and includes a wealth of explanation of the technical aspects of the proposals submitted by Voith and Alstom. Because Mr. Reed's "value-added attributes" findings do not speak to what is central to the analysis required here, the court does not find the Reed Report to be on the same footing as the expert opinion already incorporated into the administrative record.

The court notes, further, that the parties are represented by able counsel and the briefing schedule permits the crafting of well-reasoned, informative briefs. In addition, the consideration of an expert report that analyzes the merits of an offeror's proposal could intrude upon the court's role as fact-finder, and could undermine the court's review of the agency's award decision under the deferential APA standard. See, e.g., Sotera Def. Sols., Inc. v. United States, 118 Fed. Cl. 237, 264 n.18 (2014) (declining to consider a declaration which provided an analysis of the relative merits of the awardee's and protestor's proposals, because the protest "was adequately informed by the [administrative record] and the parties' arguments" (citing Axiom, 564 F.3d at 1380)); Orion Tech., Inc. v. United States, 101 Fed. Cl. 492, 497 (2011) (stating that "it would be nonsensical for [the court] to consider or adopt an opinion from a putative expert attempting to . . . substitute his judgment for that of the agency"). For these reasons, the Reed Report will not supplement the administrative record in this case.

10

D. Federal Rules of Evidence (FRE)

Finally, the court need not inquire into the admissibility of the Reed Report under the FRE, as plaintiff urges. The gravamen of plaintiff's motion is that the court should supplement the administrative record with Mr. Reed's findings. That request must be denied under Axiom, Alabama Aircraft, and Blue & Gold Fleet, and the court's conclusion in that regard renders the issue of the admissibility of the Reed Report under the FRE irrelevant to the question before the court.

IV. Conclusion

For the foregoing reasons, plaintiff's motion to supplement the record and admit the Reed Report into evidence, ECF No. 54, is **DENIED**. The Reed Report is not part of the administrative record in this case; nor will the court consider the content of the Reed Report in its analysis of the issues presented by this bid protest. On or before **March 14, 2019**, the parties shall **CONFER** and **FILE** a **Proposed Redacted Version** of this opinion, with any competition-sensitive or otherwise protectable information blacked out.

IT IS SO ORDERED.

s/Patricia E. Campbell-Smith
PATRICIA E. CAMPBELL-SMITH
Judge